THE STATE OF WISCONSIN ex rel. THE BOARD OF EDUCATION OF THE CITY OF OSHKOSH vs. F. X. HABEN, Treasurer, etc.

*Legislature cannot divert moneys raised by taxation by city for specific purposes.— Proper relator in mandamus.*

1. Money raised in a city, by taxation, for the purpose of erecting a high school building, cannot be diverted by an act of the legislature, without the assent of the city or its inhabitants, to the purchase of a site for a normal school in said city.
2. The proper relator in *mandamus* to compel an officer to pay an order drawn on him, is the holder of the order, and not the party who drew it.
3. Want of title in relator is a defect for which the writ will be quashed.

APPEAL from the Circuit Court for *Winnebago* County.

The alternative *mandamus* issued on the relation of the board of education of the city of Oshkosh, stated that said board, besides having general power to build schoolhouses in said city and to cause such sums of money to be levied annually as they might deem necessary for defraying the expenses of the public schools in said city, were authorized by chap. 236, Local Laws of 1866, to raise by special

tax such sums of money as they might deem necessary, not exceeding the sum of $15,000, to be used for the erection of a suitable building for a high school in said city; and were further authorized to raise in the same way, at any time within three years from the passage of that act, such sums as they might deem necessary, not exceeding in the whole the sum of $25,000, for the purpose of aiding in establishing a state normal school in said city, and for the purpose of building a high school building; the money so raised under said act to be appropriated to the purposes therein named, by said board at such times and in such proportion as in their judgment should appear necessary; that on the 27th of April, 1866, said board, deeming it necessary, resolved that the sum of $15,000 be raised by special tax upon the taxable property in said city, for the purpose of erecting a high school building according to said act, which sum was duly assessed, collected and paid over to the treasurer of the city; that on the 31st of October, 1866, said board further resolved that the sum of $15,000 be levied for high school building purposes, and the sum of $7,870 for general fund purposes for the ensuing year, which sum of $22,870 was collected and paid over to the city treasurer; that on the 6th of April, 1867, *Frank X. Haben*, as treasurer of said city, received from his predecessor $24,653.06 for the use of the said board and the common schools of the city, being the public school fund and the unexpended balance of $30,000 raised for the purpose of building a high school house, and that on the 10th of July, 1867, there was paid over to said treasurer $1,875.58, appropriated to the city from the increase of the state school fund for the support of common schools, of which several sums unexpended by the board, about $10,000 remained in the hands of said *Haben* as treasurer, at the date of said writ; that in January, 1867, said board had entered into a contract for the erection

VOL. XXII.—43.

of a high school building at a cost of $30,000 and upwards, to be paid to the contractors as the work progressed; that the building was partially roofed at the date of said writ, and that it was necessary that further money should be expended to save the building from harm by the elements during the ensuing fall and winter; that on the 6th of September, 1867, the relators drew five orders on said city treasurer for $100 each, payable to L. G. Alger, for money due him as one of the contractors on said building, which orders were presented on the next day to said treasurer, who paid three of them and refused to pay the rest, claiming that there was no money in his hands subject to their order, and insisting that the funds in his hands belonging to the relators had been set apart and appropriated to state normal school purposes by chap. 348, Local Laws of 1867, whereas in fact no part of said fund had been or could be diverted from the purpose for which the same was raised and appropriated; that unless said treasurer were compelled to pay said orders, work on said high school building would have to be suspended; and unless he were compelled to pay over the money in his hands for the use of the relators, for the support of the common schools of said city, the same would have to be discontinued; and the writ required the defendant to pay said two orders drawn in favor of said Alger and still unpaid, or show cause, etc. A motion was made to quash the writ, on the ground that the *Board of Education* were not proper relators, and that by law the defendant was required to retain the moneys demanded in said orders. Motion denied; and defendant appealed.*

---

* Sec. 1 of ch. 236, Local Laws of 1866, referred to in said writ, is as follows: "The board of education of the city of Oshkosh are hereby authorized to raise by a special tax upon the taxable property in that city, such sum of money as they may deem necessary, not exceeding the sum of $15,000,

The State of Wisconsin ex rel., etc., vs. F. X. Haben, Treasurer, etc.

*Jackson & Halsey,* for appellant, to the point that the board of education was not the proper relator, cited 3 Blacks. Com., 110–111; 11 Wis., 153; 10 id., 518–525; 25 Barb., 76; 10 Wend., 26. As to the transfer of the fund from one purpose to another, they argued that the moneys were public property; that the legislature may change one kind of public use into another, so long as the property continues to be devoted to a public use (27 N. Y., 188; *S. C.,* 37 Barb., 357); that if the legislative act in question would have been invalid without consent of the municipal authorities of the city, it was certainly valid if they assented to it; that the writ does not negative that assent; that in fact the act was

to be used for the purpose of erecting a suitable high school building in said city." Sec. 5 of the same chapter declared that the board might, if in their judgment it was necessary, "appropriate the whole or any portion of the money so raised as aforesaid, to the purpose of establishing a state normal school in said city, instead of the purpose aforesaid." Sec. 6 is as follows: "The said board of education are hereby further authorized and empowered to raise, in manner and form as prescribed in the foregoing sections of this act, at any time within three years from the passage of this act, such sum or sums of money as they may deem necessary, not exceeding in the whole amount the sum of $25,000, for the purpose of aiding in the establishment of a state normal school in said city, and for the purpose of a high school building." Sec. 7. "The moneys raised under this act shall be appropriated to the purposes herein named, by said board of education, in such proportion and at such times as in their judgment shall appear necessary." Sec. 1, chap. 348, Local Laws of 1867, is as follows: "There shall be set apart and retained in the treasury of the city of Oshkosh, until the tax hereinafter authorized shall be levied and collected, out of the tax levied in the year 1866, under the authority conferred by chap. 236 of the private and local laws of 1866 (entitled "an act to authorize the board of education of the city of Oshkosh to levy a tax to build a school house ") the sum of $10,000: *provided, however,* that the purchase money for the site selected for a normal school in said city, shall be paid out of said $10,000, when the title of said site shall be approved by the board of regents of normal schools, upon orders drawn therefor by the mayor and clerk of said city."

passed at the request of the city authorities, and of the board of education, " as will appear by their formal resolves, which have been made a part of the legislative annals of the state, and of which, as such the court will take judicial knowledge;" that the tax payers paid the money with the understanding that the whole of it was liable to be used for normal school purposes, and that at least some of it *must* be used for that purpose; and that the treasurer was not bound to pay an order drawn for either purpose to which the fund was to be applied, until the board had made a division of the funds between the two purposes, so as to render it certain how much should be disbursed for each.

*Freeman & Hancock*, for respondent, to the point that the board were the proper relators, cited 25 Maine, 291; 4 Mich., 187; 5 id., 68; 28 Pa. St., 108; 2 B. & Ald., 115; Moses on Mandamus, 196–97; 3 Ind., 452; 19 Wend., 56; 7 Term, 463; 1 id., 146; 11 Ill., 202; 19 Ohio, 178; 17 Wis., 687; 24 N. Y., 114; 23 Wend., 458; 10 id., 363. 2. Every resident of Oshkosh had a vested interest in this fund, and a right to compel its application to the purposes for which it was created. 22 Pick., 263.

Dixon, C. J. This case presents two questions, which may be stated thus: 1. Was the defendant justified in refusing payment of the orders set forth in the alternative writ? 2. If he was not, are the relators the proper parties to apply to the court for a writ of *mandamus* to compel him to pay them?

The answer to the first question depends on the validity of so much of section 1, chap. 348, Private and Local Laws of 1867, as sets apart and retains in the treasury of the city of Oshkosh, or attempts so to do, the sum of ten thousand dollars out of the tax levied in the year 1866 under the authority conferred by chapter 236, Private and Local Laws

of 1866, entitled "An act to authorize the board of education of the city of Oshkosh to levy a tax to build a school house," which said sum of ten thousand dollars, so to be set apart and retained, was to be paid out as the purchase money for the site for a normal school in said city, to be selected and the title approved and accepted by the board of regents of normal schools.   The tax levied in the year 1866, of which this sum of ten thousand dollars was a portion, was, in the words of the act by which it was authorized, levied "to be used for the purpose of erecting a suitable high school building in said city."   It was lawfully so levied.   It is true that the board of education of the city of Oshkosh, under whose direction the levy was made, were authorized to raise a portion of the sum or sums specified in the 6th section of the act "for the purpose of aiding in the establishment of a state normal school in said city." This authority was, however, purely discretionary; and as the board of education saw fit not to raise any money for that purpose, the inquiry is the same as if no such authority had been conferred.   The question then is : Was it competent for the legislature, without the assent of the city or its inhabitants, thus to divert the funds raised and in the hands of the treasurer for the purpose of erecting a suitable high school building, and to declare that they should be appropriated, not for that purpose, but for the purpose of purchasing the site for a state normal school in the city ? We are clearly of opinion that it was not.   It is well settled as to all matters pertaining to vested rights of property, whether real or personal, and to the obligation of contracts, that municipal corporations are as much within the protection of the federal constitution as private individuals are. The legislature cannot divest a municipal corporation of its property, without the consent of its inhabitants, nor impair the obligation of a contract entered into with or in

behalf of such corporation. See *Milwaukee v. Milwaukee*, 12 Wis., 93, and authorities cited. What was the act in question but a most obvious attempt, at the mere will of the legislature, to deprive the city of Oshkosh of so much money lawfully acquired for a proper municipal purpose, and, without the assent of the inhabitants, to apply it to another purpose, not municipal, but one in which all the people of the state have a common interest? Clearly no other effect can be given to it. A state normal school, as its name indicates, is a state institution established for the benefit of the people of the entire state and maintained by funds provided by the state. This will readily appear from an examination of the several statutes under which those schools are organized, and which prescribe the powers and duties of the board of regents of the same. R. S., ch. 22; Laws of 1859, ch. 94; Laws of 1865, ch. 537; Laws of 1866, ch. 116. The regents are appointed by the governor by and with the approval of the senate, and the title of the lands, buildings, furniture, books, apparatus and all other property and effects, is vested in the board, which has the exclusive management and control of the same. To say, therefore, that the legislature can, without the assent of the proper municipal authorities or of the inhabitants, take the money of the city of Oshkosh and appropriate it to the establishment of a state normal school, is to say that it can take the money of any municipal corporation and apply it to any general state purpose. If the act had directed the money in question to be deposited in the state treasury as part of the general fund belonging to the state, or had appropriated it toward the completion of the state capital now in process of construction, the violent nature of the proceeding might have been more manifest, but it would not have been more unauthorized. The advantages incidentally accruing to the citizens of Oshkosh from the es-

tablishment of a state normal school at that place, though sufficient, with the consent of the legislature, to justify the citizens themselves, or the proper municipal officers, in levying a tax to aid in the purchase of a site or the erection of buildings, do not change the nature of the question here presented. The tax so levied must be with the assent of the citizens or proper city officers. The legislature has no power arbitrarily to impose such a tax, as that would not only be in plain conflict with the rule of uniformity in taxation prescribed by the constitution, but contrary to the general principles of law governing such proceedings. If, therefore, the legislature cannot impose a tax for such a purpose, it follows that it cannot for the same purpose arbitrarily appropriate the money of the city already lawfully raised by taxation for another. As well might the legislature, without the assent of the city, appropriate the high school building itself, after its completion, for a state normal school, as seize the funds provided by the city for the purpose of erecting it. This, we think, would be regarded by every one as wholly unjustified by any sound principle of legislation—a mere act of lawless violence. The act in question, though the injustice of it may not be quite so apparent, in reality stands on no better foundation.

2. Are the relators the proper parties to apply for this writ? We think not. The object of the writ is to compel the respondent, who is the treasurer of the city, to pay two orders for the sum of $100 each, drawn by the relators, the board of education of the city, in favor of one Alger, a contractor on the high school building, and delivered to him, which orders, now in the possession of and belonging to Mr. Alger, have been presented by him to the defendant, and payment demanded and refused. These, with the further averment that the defendant has money in his hands

with which he ought to have paid the orders, constitute all of the material allegations of the writ. The other matters stated, though very useful to show the embarassments of the board of education caused by the respondent's withholding money due upon its orders, are wholly irrelevant to the real cause of action set forth, which is the improper refusal to pay the sum of $200 to Mr. Alger. The embarassments of the board constitute no ground for issuing the writ, or reason why the members should interfere to compel the payment of money to a third person, in which they have no actual interest. The board parted with all its interest in the money on issuing the orders; and if the holder of the orders sees fit to acquiesce in the respondent's refusal to pay them, or not to institute proceedings to compel their payment, as he might do, no reason is perceived why the board should complain. As already observed, the obstacles thrown in the way of the future operations of the board by the refusal of the respondent to pay its orders, should he persist in so doing, constitute no ground in law for issuing the writ. It is only upon the clear legal right to have the orders already issued paid, that the writ can be granted; and for the violation of that right, it is well settled that the application must be by the real party in interest. The case in this respect differs entirely from that of *The State ex rel., etc., v. City of Cincinnati et al.*, 19 Ohio, 178, and others cited by counsel, where the relators had not parted with their interest in the funds by the issuing and delivery of proper orders, but where the proceedings were instituted against other officers to compel them to perform certain duties in order to enable the relators to obtain control of funds to which by law they were entitled.

*By the Court.*—Order reversed.