## Pennsylvania Company, Appellant, *v.* Pittsburg.

*Municipalities—Consolidation—Indebtedness—Taxation—Act of February 7,* 1906, *P. L.* 7.

1. When two or more cities are consolidated into one municipality, the legislature by the act authorizing the consolidation may make the consolidated city liable for the indebtedness of the old municipalities; or it may provide for an equitable apportionment of the existing burdens by requiring each of the respective municipalities to be responsible for its own indebtedness at the time of consolidation, and by providing for the payment of such indebtedness by taxation limited to the property located within the limits of the municipality contracting the same.

2. The consolidated city of Pittsburg has no power to levy a tax upon real estate situated in the city of Allegheny belonging to railroad companies for the purpose of paying the debt of the city of Allegheny created prior to the consolidation, where it appears that such real estate is essential to the exercise of the franchises of the railroad companies, and that the city of Allegheny had never taxed it and had no power to tax it prior to the consolidation.

3. The consolidating act did not confer upon the consolidated city the power to create any new subjects of taxation either within the old limits of each of the constituent cities, or indeed within the limits of the consolidated city treated as a single municipality.

Argued Oct. 20, 1909. Appeal, No. 89, Oct. T., 1909, by plaintiffs, from decree of C. P. No. 3, Allegheny Co., Nov. T., 1908, No. 692, dismissing bill in equity in case of Pennsylvania Company, operating and leasing the Pittsburg, Fort Wayne & Chicago Railway and the Cleveland & Pittsburg Railroad and the Pittsburg, Fort Wayne & Chicago Railway Company and the Cleveland & Pittsburg Railroad Company, v. City of Pittsburg. Before Fell, Brown, Mestrezat, Potter, Elkin and Stewart, JJ. Reversed.

Bill in equity for an injunction.

Kennedy, P. J., found the facts to be as follows:

1. That the plaintiff, the Pennsylvania Company, is a corporation duly organized and existing under the laws of the commonwealth of Pennsylvania, by virtue of an Act of the assembly approved April 7, 1870, P. L. 1025, and its supplements, and was created for, and exercises, inter alia, public functions, and as such corporation has for many years leased, and has and is operating certain lines of steam railway extending westwardly from the city of Pittsburg, Pennsylvania, into and through the state of Ohio, and into and through various other states, one of which said lines it operates and leases by and under the terms and provisions of certain articles of agreement had with the Pittsburg, Fort Wayne & Chicago Railway Company, a steam railway corporation duly organized and existing under the laws of the commonwealth of Pennsylvania, and one of which said lines it operates and leases by and under the terms and provisions of certain articles of agreement had with the Cleveland & Pittsburg Railroad Company, a steam railway corporation duly organized and existing under the laws of the commonwealth of Pennsylvania. The said Pennsylvania Company is obliged to pay lawful taxes, assessments, etc., levied or assessed against the properties of the said railway companies.

2. That the city of Pittsburg, the defendant, is a municipal corporation of the commonwealth of Pennsylvania, and a city of the second class.

3. That the former city of Allegheny, a municipal corporation of the commonwealth of Pennsylvania, and a city of the second class, was on or about December 6, 1907, annexed to the city of Pittsburg, as a result of proceedings duly had in the court of quarter sessions of Allegheny county at No. 71, December term, 1905 (Miscellaneous Docket), by virtue of an Act of assembly approved February 7, 1906, P. L. 7, and the said city of Allegheny is now known as the "North Side" of the city of Pittsburg.

4. That the Pittsburg, Fort Wayne & Chicago Railway Company owns in fee simple or base fee title, or occupies by and under grants from the former city of Allegheny certain tracts or parcels of land situate in the first, second, fourth, sixth and

ninth wards of the former city of Allegheny, now the "North Side" of the city of Pittsburg, and the Cleveland & Pittsburg Railroad Company owns certain tracts or parcels of land situate in the fifth, sixth and ninth wards of the former city of Allegheny, now the "North Side" of the city of Pittsburg.

6. That all of the above-mentioned tracts or parcels of land described in exhibit "A" form no part nor are included in the main tracks or rights of way of the plaintiff companies, but all of said tracts or parcels of land are adjacent or contiguous to the rights of way of the railroads operated and maintained by the Pennsylvania Company, and all of the said tracts are occupied with tracks, switches, sidings, turnouts, freight yards, roundhouses, platforms, embankments, stations, depots, signal towers, operating offices, or similar structures, and their respective curtilages, and are reasonably necessary and material to the proper and safe operation of the railroad rights of way and roadbeds maintained and operated by the Pennsylvania Company in conducting the business of transporting freight and passengers.

7. That the said city of Pittsburg, through its department for the assessment of taxes, prior to February 1, 1908, made assessments for the purposes of municipal taxation for the fiscal year commencing February 1, 1908, upon the tracts of land and the structures thereon mentioned in the fifth paragraph of this bill; and the said assessments, with the valuations made thereon, are shown upon exhibit "A" of the bill. The city of Pittsburg has levied and assessed taxes upon all real estate situate on the north side of the city of Pittsburg, formerly city of Allegheny, including the parcels described in exhibit "A" of the plaintiffs' bill, for the purpose of paying the bonded and floating indebtedness of the former city of Allegheny as it existed prior to its annexation to the city of Pittsburg, by virtue of an ordinance recorded in ordinance book, vol. 19, p. 152, entitled, "An Ordinance levying taxes and water rents for the fiscal year beginning February 1, 1908 (including the levying of special taxes for the payment of the separate indebtedness of certain annexed districts)," approved March 17, 1908.

8. That the Pennsylvania Company has caused to be paid the September installments for the year 1908 of the taxes assessed and levied by the said ordinance approved March 17, 1908, and referred to in the seventh paragraph of the bill, upon properties mentioned in exhibit "A," and as assessed as therein shown, in so far as said ordinance has levied taxes of 9.5 mills upon each dollar of valuation for the payment of ordinary current expenses of the city; also, taxes of four mills upon each dollar of valuation for the use of the central board of control having charge of the Allegheny school district; also the taxes of various millages upon each dollar of valuation for the uses of the subdistrict schools, of the respective wards in which the properties are situate. The March installment for the year 1908 of the said taxes is now delinquent, liability for the same in the amount paid upon the September, 1908, installment and for the purposes above mentioned, with the lawful penalty for the delinquency, not being denied in this proceeding.

9. That the said ordinance approved March 17, 1908, purports to levy and assess millage of 5⅓ mills upon all property taxable for state, county or city purposes within the limits of Allegheny as it existed prior to its annexation with the city of Pittsburg, for the sinking fund and interest on the bonded debt, and for the payment of the separate floating indebtedness of the former city of Allegheny. The millage so fixed at 5⅓ mills is for the payment of the funded debt of the former city of Allegheny, evidenced by various bonds issued from time to time under various ordinances of the city of Allegheny, and interest thereon. In each of said ordinances authorizing the respective loans, an annual tax was levied upon all property in the city of Allegheny, made taxable by law, sufficient to pay the loan and the interest thereon within thirty years, and providing a sinking fund for the payment of the principal. The various ordinances authorizing the issuance of bonds from time to time enacted by the city of Allegheny provided that until the bonds issued in pursuance thereof shall be fully paid, "there is hereby levied and assessed annually upon all subjects now by law liable or hereafter to be made liable to assessment for taxation for city purposes, a tax sufficient to pay the

interest on said bonds, etc., and also sufficient to pay the principal of said bonds, as they become due and payable, according to their terms, . . . . The gross separate bonded indebtedness of the former city of Allegheny at the time of the annexation to the city of Pittsburg was $7,539,246, the net debt being $5,899,437.46.

10. That the said city of Pittsburg claims the right to collect taxes of five and one-third mills upon each dollar of valuation upon the properties of the plaintiffs referred to in exhibit "A" of plaintiffs' bill, for the sinking funds and interest on the bonded debt, and for the payment of the separate floating indebtedness of the former city of Allegheny.

11. That by an act of assembly of the commonwealth of Pennsylvania entitled, "An Act to enable the City of Pittsburg to raise additional revenue," approved January 4, 1859, P. L. 828, powers are conferred upon the city of Pittsburg, inter alia, as follows, namely:

"That all real estate situated in said city owned and possessed by every railroad company, shall be and is hereby made subject to taxation for city purposes, the same as other real estate in said city (Pittsburg)."

12. That the city of Allegheny, prior to its consolidation with the city of Pittsburg, at various times issued bonds, and the ordinances of the said city of Allegheny authorizing such increase of its indebtedness, contained, inter alia, a provision that until all bonds issued in pursuance thereof shall be fully paid, "there is hereby levied and assessed annually upon all subjects now by law liable, or hereafter to be made liable, to assessment for taxation for city purposes, a tax sufficient to pay the interest on said bonds, and also sufficient to pay the principle of said bonds, as they become due and payable, according to their terms."

Counsel for plaintiffs have asked us to find the following:

That none of the plaintiffs' said tracts or parcels of land mentioned in exhibit "A" of the bill, or of the structures thereon erected, has ever been assessed by the county of Allegheny for the purposes of local or state taxation, as other real estate within the county; and the city of Allegheny prior to

its annexation to the city of Pittsburg never levied or attempted to collect taxes for municipal or local purposes on any of the plaintiffs' tracts of land or the structures thereon erected.

The statement of the facts contained in this finding is true, but the facts are immaterial to this issue, and hence we decline to find as requested.

The court found as a conclusion of law that the tax on the real estate in question was a valid one and accordingly dismissed the bill.

*Error assigned* was decree dismissing the bill.

*R. H. Hawkins,* of *Dalzell, Fisher & Hawkins,* for appellants.—The plaintiffs' properties are tax exempt under general laws: Pennsylvania R. R. Co. v. Pittsburg, 104 Pa. 522; Conoy Twp. Supervisors v. Power Co., 222 Pa. 319.

The local act of 1859 does not justify a tax to pay Allegheny's debt simply because Allegheny was annexed to Pittsburg.

Allegheny City still exists, to the extent that it must pay its debts under its taxing power—not under Pittsburg's taxing power: Broughton v. Pensacola, 93 U. S. 266.

The presumption is against the city: Com. v. R. R. Co., 188 Pa. 169; Tennessee v. Whitworth, 117 U. S. 129 (6 Sup. Ct. Repr. 645).

That the lower court had jurisdiction to grant the relief prayed for in this bill, we believe to be beyond question, and cite: Arthur v. School District, 164 Pa. 410. The question of want of jurisdiction was never raised, as required by the Act of June 7, 1907, P. L. 440. Jurisdiction in equity was sustained in the similar case of Pennsylvania R. R. Co. v. Pittsburg, 221 Pa. 90.

*Lee C. Beatty,* first assistant city solicitor, with him *C. A. O'Brien,* city solicitor, for appellee.—By the annexation act, Allegheny was annexed to the city of Pittsburg, and the laws of the city of Pittsburg are supreme over the city of Allegheny.

Upon such annexation, according to the uniform decisions of the courts, the corporate existence of the city of Allegheny ceased: Mount Pleasant v. Beckwith, 100 U. S. 514.

Opinion by Mr. Justice Elkin, January 3, 1910:

This is an injunction bill filed to restrain the consolidated city of Pittsburg from collecting a tax of five and one-third mills upon the assessed valuation of certain real estate belonging to the appellant companies located in the former city of Allegheny and which prior to the consolidation of the two cities was not subject to taxation as real estate because deemed to be essential and necessary to the exercise of the franchises of these public service corporations. The tax in question was levied by ordinance for "the purpose of providing sufficient revenue for the payment of the interest on the funded debt, and to provide sinking funds, as required by law, for the retirement of said debt at maturity." This ordinance covered generally all of the constituent parts of the consolidated city, but as to the old city of Allegheny it expressly provides as follows: "For the sinking fund and interest on the bonded debt, and for the payment of the separate floating indebtedness of the city of Allegheny as it existed prior to its annexation with the city of Pittsburg—upon all property taxable for state, county or city purposes within the limits of said city, as it existed prior to its annexation with the city of Pittsburg, five and one-third mills upon each dollar of valuation." A literal reading of the ordinance would seem to be a complete answer to the contention made in behalf of the city seeking to levy and collect the tax in question. The officers authorized to assess the property and collect the tax have no greater power than the ordinance gave them, which was to levy and collect for the purposes stated a tax of five and one-third mills upon the valuation of "all property taxable for state, county or city purposes within the limits of said city, as it existed prior to its annexation with the City of Pittsburg." It is conceded by all parties and has been found as a fact by the learned court below that the particular real estate affected by this proceeding and now sought to be taxed was not taxable for

state, county or city purposes prior to the consolidation of the two cities. The ordinance only imposed a tax on property taxable by the old·city of Allegheny and contains no warrant to include property which never had been, and under the law could not have been, taxed by that city. The lawmaking body of the consolidated city must have had this thought in mind because the intention to limit the levy to property taxable by the annexed city at and prior to the time of annexation is clearly expressed. There is good reason for the action of councils thus taken. Section eight of the consolidating act provides: "Each of the constituent cities, and the intervening land, if any, so consolidated, shall pay its own floating and bonded indebtedness and liabilities of every kind, and the interest thereon, as the same existed at the time of annexation; and the councils of the consolidated city shall levy, respectively, on the properties in each of the said cities and intervening land so consolidated, and as they existed at the time of annexation, a tax sufficient to provide funds for each to pay its own floating and bonded indebtedness and liabilities and interest, as the same may accrue." The power of the legislature to thus provide is not open to serious question. The general rule is that when two or more cities are consolidated into one municipality, the legislature by the act authorizing the consolidation may make the consolidated city liable for the indebtedness of the old municipalities; or it may provide for an equitable apportionment of the existing burdens by requiring each of the respective municipalities to be responsible for its own indebtedness at the time of consolidation, and by providing for the payment of such indebtedness by taxation limited to the property located within the limits of the municipality contracting the same. It is not necessary to cite authorities to sustain this rule, as it is of general application unless otherwise provided by constitutional requirements. Here, then, we have in the act of consolidation an express provision that each of the constituent cities shall pay its own floating and bonded indebtedness and liabilities of every kind existing at the time of annexation, and the interest thereon. The councils of the consolidated city are authorized to levy on

properties respectively located within each of said cities a tax sufficient to provide funds to pay the existing indebtedness of each municipality at the time of consolidation. The legislature had the power to thus provide, and the language of the statute is so plain as to leave no doubt about its exercise. With the express provision of the act before them the citizens of the two cities voted in favor of consolidation, but it was consolidation upon the conditions and subject to the provisions of the act authorizing the same.

As to existing floating and bonded indebtedness each city was left with its own obligations, and the taxable property located within the territorial limits of each contracting municipality is subject to taxation for the purpose of meeting this burden which has not been shifted to other shoulders. In other words, property taxable by the former city of Allegheny remains subject to taxation for the purpose of paying its then existing bonded and floating indebtedness, and property then taxable by the old city of Pittsburg remains subject to taxation for the payment of its prior indebtedness. This of course does not mean that if by general statute, or rule of law, or added improvements, new taxable subjects are created in either city, they would be exempt from taxation. No such construction could or would prevail. But in this instance it is not necessary to rely on a rule of construction because the original ordinances under which the indebtedness of the city of Allegheny was created provide, inter alia, that "there is hereby levied and assessed, annually, upon all subjects now by law or hereafter made liable to assessment for taxation for city purposes, a tax sufficient to pay" interest and create a sinking fund as required by law. Not only do the original ordinances provide for the annual assessment and levy of taxes upon all subjects now by law or hereafter made taxable, but in the absence of any such provision, the words "taxable property" must be held to include all subjects of taxation within the territorial limits of the contracting municipality at the time the indebtedness was created as well as all taxable subjects added in fact or by law during the continuance of the debt. The important fact to keep in mind in the present case is that

only property taxable in the old city of Allegheny, or which under the law may become taxable therein, can be subjected to taxation for the purpose of liquidating its floating and bonded indebtedness at the time of annexation. The properties of the appellant companies sought to be taxed are essential and necessary to the exercise of the franchises of these public service corporations, and as such are not now and never were subject to taxation by the city of Allegheny for municipal purposes. The consolidating act did not confer upon the consolidated city the power to create any new subjects of taxation either within the old limits of each of the constituent cities, or indeed within the limits of the consolidated city treated as a single municipality. There is a wide difference between the authority to levy and assess a tax and the power to create a subject of taxation. Municipalities are the creatures of the state and have no powers except such as have been expressly conferred by the legislature or which arise by necessary implication. With this distinction in mind the difficulties which seem to have arisen in the present case are easily solved. The power conferred by section eight of the consolidating act upon councils was to levy a tax upon taxable properties located in the respective cities, as they existed at the time of annexation. This did not include the power to create a new taxable subject in the former city of Allegheny for the purpose stated. Taxable subjects are created by general laws, except in some instances where prior to the adoption of the new constitution, local acts were passed providing for the assessment of certain kinds of property, not subject to taxation under general statutes, for local purposes. Such acts could not now be passed, but when not repealed they have been held to be in force within the limits of the district affected for the purpose intended. Real estate in the city of Allegheny was taxable under the general law and was not affected by any local act imposing a tax for municipal purposes on the properties of the appellant companies. We find nothing in the consolidating act which authorized councils of the consolidated city to levy a tax upon any other property within the limits of the city of Allegheny for the purpose of paying its existing

indebtedness, than was taxable under general laws. There are other interesting questions passed upon by the learned court below and ably argued here, but for the reasons hereinbefore stated, the decree must be reversed and no useful purpose will be served by a further discussion of them. We therefore hold that the properties of the appellant companies, not subject to taxation at the time of annexation, were not made subject to taxation for the purpose of providing for the payment of the floating and bonded indebtedness of the former city of Allegheny and the interest accrued and accruing thereon, by the act of consolidation, and that by reason thereof the decree entered by the court below must be reversed.

Decree reversed, bill reinstated and record remitted with directions to enter such decree in accordance with the views herein expressed as will protect the rights of the parties.

Costs to be paid by appellee.