

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

January 17, 1966

Dr. S. H. Frazier
Commissioner of Mental Health
  and Mental Retardation
Box S, Capitol Station
Austin, Texas  78711

Opinion No. C-584

Re: Whether the establishment of
    community mental health centers
    pursuant to the provisions of
    H. B. No. 3, Acts 59th Legis-
    lature, 1965, is permissible
    under the Texas Constitution

Dear Dr. Frazier:                and related question.

        We are in receipt of your letter of recent date
requesting an opinion on the questions hereinafter stated:

        1.  Would establishment of community mental
    health centers pursuant to the provisions of
    Article 3 of House Bill 3, Acts 59th Legislature,
    Regular Session, 1965, be permissible under the
    Constitution of the State of Texas?

        2.  Would the allocation of financial grants-
    in-aid to community centers established under
    Article 4 of House Bill 3, Acts 59th Legislature,
    Regular Session, 1965, under the conditions and
    rules and regulations prescribed by the Act be
    permissible under the Constitution of the State
    of Texas?

        Article 3 of House Bill 3, Acts of the 59th Legislature,
Regular Session, 1965, Chapter 67, page 165, provides in Section
3.01 thereof the following:

        "Sec. 3.01  (a)  One or more cities, counties,
    hospital districts, school districts, rehabilitation
    districts, state-supported institutions of higher
    education, and state-supported medical schools, or
    any combination of these, may cooperate, negotiate,

-2817-

and contract with each other through their governing bodies to establish and operate a community center.
(b) As used in this Act, a 'community center' may be:
(1) a community mental health center, which provides mental health services; or
(2) a community mental retardation center, which provides mental retardation services; or
(3) a community mental health and mental retardation center, which provides mental health and mental retardation services."

and Section 3.14 provides as follows:

"Sec. 3.14. A community center may provide services free of charge to indigent persons. It may charge reasonable fees, to cover costs, for services provided to other persons. With respect to the collection of fees for the treatment of non-indigent persons, it has the same rights, privileges, and powers granted to the Texas Department of Mental Health and Mental Retardation." (Emphasis added).

It thus appears that the community centers which would be established under Article 3 of House Bill 3, Acts of the 59th Legislature, Regular Session, 1965, become an agency of the State of Texas and we can find no constitutional provision that would inhibit the establishment of such community centers for mental health and mental retardation services.

Your next question concerns the allocation of financial grants-in-aid to community centers established under Article 4 of House Bill 3, Acts 59th Legislature, Regular Session, 1965, under the condition and rules and regulations prescribed by the Act and if such allocations would be permissible under the Constitution of the State of Texas.

Section 1 of Article II, House Bill 12, Acts 59th Legislature, Regular Session, 1965, Chapter 720, Appropriations, appropriates at page 1705 to the Texas Department of Mental Health and Mental Retardation $600,000 for the year ending August 31, 1966 and $750,000 plus unexpended balances for the year ending August 31, 1967 out of which grants-in-aid to community centers may be made.

Article 4 of House Bill 3, Acts 59th Legislature, Regular Session, 1965, provides as follows:

"Sec. 4.01. As soon as possible after its establishment, a community center shall formulate and submit to the Department:

(1) a copy of the written agreement between the participating local agencies;

(2) a plan, within its projected financial, physical, and personnel resources, to develop and make available to the residents of the region a full range of effective mental health or mental retardation services, or both.

"Sec. 4.02. A community center is eligible to receive state grants-in-aid if:

(1) the population within the region served is 100,000 or more according to the last preceding federal census; and

(2) it qualifies according to the rules of the Department.

"Sec. 4.03. (a) The Department shall make rules, consistent with the purposes, policies, principles, and standards provided by this Act, establishing the minimum standards relating to the amount, quality, kinds, and accessibility of services which must be provided by a community center in order to qualify it for state grants-in-aid.

(b) The Department shall make rules under which a newly established community center with a sound plan for the development of the full range of services may qualify for grants-in-aid although it does not presently qualify under Subsection (a) of this section.

(c) The Department shall hold hearings on all proposed rules under this section. Community centers and local agencies shall be given notice and an opportunity to testify. Delivery or publication of notice may be given in any form which is reasonably calculated to give actual notice.

"Sec. 4.04. The Department shall allocate to the eligible community centers the money appropriated to the Department for that purpose.

"Sec. 4.05. In determining the percentage of the total amount available to be allocated

to each eligible community center, the Department shall give due consideration to the following factors:

(1) the population of the region served by the center;

(2) the socio-cultural and economic characteristics of the region;

(3) the rate of mental disorders and disabilities in the region as revealed by reliable statistics;

(4) the ability or potential ability of the center to provide comprehensive services for all residents of the region; and

(5) the quality of the center's services and the effectiveness of the services in terms of average cost per patient-stay and other relevant indices, or the potential quality and effectiveness of the services.

"Sec. 2. Hospital Board Abolished. The Board for Texas State Hospitals and Special Schools is abolished. This does not preclude the Governor from appointing one or more members of that board to the Texas Board of Mental Health and Mental Retardation.

". . .

"Sec. 4. Effective Date. This Act takes effect on September 1, 1965.

". . ."

It will be noted from a careful reading of Article 4 of House Bill 3, supra, that the Department of Mental Health and Mental Retardation controls the supervision and operation of such community centers.

As your second question concerns whether the allocation of financial grants-in-aid to community centers established under Article 4 of House Bill 3, Acts of the 59th Legislature, Regular Session, 1965, under the conditions and rules and regulations prescribed by the Act would be permissible under the Constitution of the State of Texas, the only section of the Constitution which we deem necessary to discuss in this opinion, as to whether such allocations would violate the Constitution, would be Section 51 of Article III, Constitution of Texas, wherein it provides:

"The Legislature shall have no power to
make any grant or authorize the making of any
grant of public moneys to any individual,
association of individuals, municipal or other
corporations whatsoever; . . ."

In speaking of Section 51 of Article III of the
Constitution of Texas, the Supreme Court, in the case of
State v. City of Austin, 160 Tex. 348, 331 S.W.2d 737 (1960), said
in part:

". . . the purpose of this section . . .
of the Constitution is to prevent the application
of public funds to private purposes; . . . See
Byrd v. City of Dallas, 118 Tex. 28, 6 S.W.2d 738."
(Emphasis added).

It is well settled in this state that when a law
duly enacted is attacked as unconstitutional it is presumed
to be valid and doubts as to its unconstitutionality should
always be resolved in favor of constitutionality, and a
construction will be given, if reasonable, that will uphold it.
Southern Pine Lumber Company v. Newton County Water Supply
District, 325 S.W.2d 724 (Tex.Civ.App. 1959, err. ref., n.r.e.).

It thus appears that your inquiry resolves itself
into a question of whether the allocation of financial grants-
in-aid to community centers established under House Bill 3,
Acts of the 59th Legislature, Regular Session, 1965, is within
the meaning of applying "public funds to a private purpose."
We think that it is not.

In Attorney General's Opinion V-1067 (1950), this
office said in part:

"In determining whether an expenditure of pub-
lic monies constitutes a gift or a grant of public
monies, the primary question is whether the funds
are used for a 'public' or 'private' purpose. The
benefit of the State from an expenditure for a
'public purpose' is in the nature of consideration
and the funds expended are therefore not a gift
even though private persons are benefited therefrom."

The determination of what constitutes a "public
purpose" for which a State may expend public monies has been
held to be primarily a legislative function, subject to review
by the courts when abused, and the determination of the legis-
lative body of that matter has been held to be not subject to

be reversed except in instances where such determination is palpable and manifestly arbitrary and incorrect. State ex rel. McClure v. Hagerman, 155 Ohio St. 320, 98 N.E.2d 835 (1951).

It appears from a reading of House Bill No. 3 that the same was set up primarily for the purposes of carrying out the provisions of Section 54 of Article XVI of the Constitution of Texas, which is set out as follows:

"It shall be the duty of the Legislature to provide for the custody and maintenance of indigent lunatics, at the expense of the State, under such regulations and restrictions as the Legislature may prescribe."

Maintenance by the State of hospitals and asylums for the care and treatment of the insane, being specifically provided for in the Constitution, is the performance of a governmental duty. (Emphasis added). Welch v. State, 148 S.W.2d 876 (Tex.Civ.App. 1941, error ref.).

That the maintenance and treatment of indigent, infirm and mentally defective persons is a strictly governmental function cannot be questioned. Commonwealth v. Liveright, 308 Pa. 35, 161 Atl. 697; Poor District Case, No. 1, 329 Pa. Sup. 390, 197 Atl. 334; Poor District Case, No. 2, 329 Pa. 410, 196 Atl. 837. In Re Erny's Estate, 12 Atl.2d 333, Pa. Sup. 1940, p. 335.

It is noted in reading Section 3.14, supra, that a community center may provide services free of charge to indigent persons and that it would charge reasonable fees to cover costs for services to other persons.

It therefore appears that services would not be given to individuals that were able to pay for treatment.

Therefore, you are advised that Section 4 of House Bill 3, Acts 59th Legislature, Regular Session, 1965, is not in violation of Section 51, Article III, Constitution of the State of Texas. Our attention has not been directed to any provision of the Constitution prohibiting the carrying out of a program as provided for in House Bill 3, supra, and therefore you are advised that Sections 3 and 4 of said House Bill 3, supra, are constitutional.

Dr. S. H. Frazier, page 7 (C-584)

## SUMMARY

1. Establishment of community health centers pursuant to the provisions of Article 3 of House Bill 3, Acts of the 59th Legislature, Regular Session, 1965, is permissible under the Constitution of the State of Texas.

2. Allocation of financial grants-in-aid to community centers established under House Bill 3, Acts of the 59th Legislature, Regular Session, 1965, and under the conditions, rules and regulations prescribed by the Act would not violate Section 51 of Article III of the State Constitution.

Yours very truly,

WAGGONER CARR
Attorney General

By: John H. Banks
Assistant

JHB:sj

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Pat Bailey
Ivan Williams
H. Grady Chandler
J. Arthur Sandlin

APPROVED FOR THE ATTORNEY GENERAL
BY: T. B. Wright