# Bidwell *versus* City of Pittsburgh.

Where a party is active in procuring an ordinance from the councils of a city directing the grading and paving of a street, is elected a commissioner under such ordinance and charged with the superintendence and control of the improvement, sells the bonds of the city and expends the proceeds thereof to defray the cost and makes the assessments upon properties abutting on said street after a particular mode of assessment, he is estopped from denying the validity of the Act of Assembly in accordance with which said ordinance was passed and the mode of assessment thus adopted.

November 8th 1877.   Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson, Woodward and Sterrett, JJ.

Error to the Court of Common Pleas, No. 2, of *Allegheny county* : Of October and November Term 1877, No. 256.

*Scire facias sur municipal claim,* issued by the city of Pittsburgh against D. W. C. Bidwell, to recover the cost of grading and

[Bidwell v. City of Pittsburgh.]

paving Ellsworth avenue, done under the provisions of the Act of
April 2d 1870, Pamph. L. 796, entitled "An Act for the improve-
ment of Penn avenue and other avenues and streets in the city of
Pittsburgh." The 26th section of this act made it general, by pro-
viding that its provisions might be extended to other streets and
avenues, on a petition of a majority of the property holders whose
properties fronted thereon.

By this act it was provided that five commissioners should be
selected by the property holders along said avenue, who were to be
charged with ascertaining the cost of the proposed improvement,
have control of the same, and make the assessments to defray the
expenses. These assessments were to be made according to the
number of feet each property abutted upon said avenue, and were
to remain a lien upon said property, to the extent of one hundred
and twenty feet in depth, until they were paid. These assessments
were made payable in ten annual instalments. The work, while it
was in progress, was to be paid for with city bonds, to be issued
upon the requisition of said commissioners, which bonds were to be
redeemed by a fund made up from the assessments.

Ellsworth avenue, which extends through a rural district, was
graded and paved under the provisions of this act, a petition having
been presented to the councils of the city of Pittsburgh, an ordi-
nance enacted, and commissioners elected in pursuance therewith.

The cost of the improvement was $166,000, for which city bonds
were issued.

Mr. Bidwell, who owned property on this avenue, was among
those who signed the petition to councils to have the same graded
and paved, and having been elected one of the commissioners, he
acted as such in directing and superintending the work, selling the
bonds, expending the proceeds thereof on the streets, and in mak-
ing the assessments on the various properties, including his own.

On the announcement of the decision in Seely v. The City of
Pittsburgh, 1 Norris 360, wherein the Supreme Court held that
the Act of 1870, in so far as it applied the frontage rule of valu-
ation to rural property, was unconstitutional, the city councils of
Pittsburgh instructed their solicitor to proceed upon a lien against
property-holders who had taken part in procuring some improve-
ment to be made, so that it might be determined whether there was
not some estoppel by which these owners of property might be made
to pay their respective assessments. Mr. Bidwell having been active
in the promotion of the improvement of Ellsworth avenue, was
selected as one of these owners of property, and against him this
suit was then brought.

The defendant resisted the claim on various grounds, among
which were these: that the Penn Avenue Act was unconstitutional;
that the frontage rule of valuation, as applied to rural lands, such
as these along Ellsworth avenue, was illegal and unjust; that said

[Bidwell *v.* City of Pittsburgh.]

avenue is a great public thoroughfare mainly for public use, and it is unjust and illegal to assess private property abutting thereon for the cost of improving it for said public use; that it was inequitable to impose the liability upon those who were active in promoting the improvement, while others are relieved therefrom who made no protest while the work was in progress but acquiesced therein, and who derive an equal benefit therefrom; that in some cases there had been no petition for grading and paving, and in some no petition was required by law, and the cost of these improvements must be paid by general taxation, and if defendant is compelled to pay this assessment his property will thus be made liable for an excessive and unjust share, while his efforts in behalf of this improvement had been made with the understanding that each street should pay for its own improvement, and each property-holder in proportion to the number of feet his property abutted on said street.

The court, White, J., in the charge to the jury, said:—

"Another ground of defence is a kind of equity arising out of the fact that many assessments cannot be collected, and to collect a part would be unjust. But this objection, it seems to me, would apply to any system of assessments or taxation. There will always be some who will not or cannot pay; and mistakes will occasionally happen which will render the collection of others impossible.

"It is better that this case should go up to the Supreme Court, on the question of estoppel. For that reason I have ruled out nearly all the evidence offered by the defendant. If this point is decided against him, his offers become immaterial.

"I therefore instruct you, that, if the defendant signed the petition to councils asking for the ordinance directing the grading and paving of Ellsworth avenue under the Penn Avenue Act; that in pursuance thereof the ordinance was passed; that the defendant was duly elected one of the commissioners, and acted as such in directing and superintending the work, selling the bonds of the city, expending the proceeds thereof on the street, and making the assessments upon the properties, including his own, for which this suit is brought; he is now estopped from denying the validity of the Act of Assembly, or its applicability to Ellsworth avenue, or the legality and validity of the mode of assessment provided in the act, and your verdict should be for the plaintiff."

The verdict was for plaintiff, and the defendant took this writ assigning this instruction of the court for error.

*T. Mellon, D. Bruce* and *M. A. Woodward,* for plaintiff in error.—The true principles, demonstrated with conclusive reasoning, in the case of Seely *v.* City of Pittsburgh, 1 Norris 360; Washington Avenue, 19 P. F. Smith 361; and Hammett *v.* City of Philadelphia, 15 Id. 151, rule this cause. And but for the remark in the conclusion of the opinion in the Seely case, that, "if

[Bidwell v. City of Pittsburgh.]

there be any facts to raise an estoppel or other defence in equity, the parties ought to have stated them," that case, as intended, would have been deemed as settling for ever the law of all this class of cases.

To constitute an estoppel at least three ingredients seem to be necessary: 1st, misrepresentation, or wilful silence by one having knowledge of the fact; 2d, that the actor, having no means of information, was, by the conduct of the other, induced to do what otherwise he would not have done; and 3d, that injury would ensue from a permission to allege the truth. And these three things must appear affirmatively: Commonwealth v. Moltz, 10 Barr 527; Eldred v. Hazlett's Adm'rs, 9 Casey 307; Helser v. McGrath, 2 P. F. Smith 534; Miranville v. Silverthorn, 12 Wright 149; Dezell v. Odell, 3 Hill (N. Y.) 215; Bigelow on Estoppel 9, 473, 480; Herman on Estoppel, § 325, &c.; Alexander v. Kerr, 2 Rawle 90; Brown v. Spalding, 1 Pittsburgh R. 361; Hill v. Epley, 7 Casey 331; Crest v. Jack, 3 Watts 240; Epley v. Witherow, 7 Id. 163; McCormick v. McMurtrie, 4 Id. 195; Wilton v. Harwood, 23 Me. 131; Bispham's Prin. of Eq., § 288–9; Barring v. Corrie, 2 B. & Ald. 137; Means v. Henderson, 1 East 335.

It is said we petitioned for the improvement, and acted as a commissioner, doing all required of such officer, and by those acts are estopped from showing that the street is through rural and farming lands, and the method of assessment thereby invalid. But in those acts there was no color of deception, misrepresentation or concealment, and, therefore, there is not and cannot be found in them any element of estoppel.

*D. T. Watson* and *T. S. Bigelow*, City Solicitor, for the city.—— Under some circumstances a party who is illegally assessed may be held to have waived all his rights to a remedy by a course of conduct which renders it unjust and inequitable to others that he should be allowed to complain of the illegality. Such a case would exist if one should ask for and encourage the incurring of the tax of which he subsequently complains: Cooley on Taxation 573; Cooley on Const. Lim. 181; Baker v. Braman, 6 Hill 47; Embury v. Connor, 3 N. Y. 511; Heyward v. The Mayor, 8 Barb. 486; Mobile and Ohio Railroad Co. v. State, 29 Ala. 586; The People v. Murray, 5 Hill (N. Y.) 468; Lee v. Tillotson, 24 Wend. 337; Kellogg, Treas., v. Ely, 15 Ohio St. 66; The People v. Goodwin, 1 Seld. 573; Ferguson v. Landram, 5 Bush (Ky.) 233; Tash et al. v. Adams, Treas., 10 Cush. 252; Van Hook v. Whitlock et al., 26 Wend. 43; Palmer v. Stumph, 29 Ind. 329; Hellenkamp v. City of Lafayette, 30 Id. 192.

Misrepresentation is not essential to estoppel: Miller's Appeal, 3 Norris 391.

[Bidwell *v.* City of Pittsburgh.]

Mr. Justice MERCUR delivered the opinion of the court, January 7th 1878.

The seventeen assignments of error may be considered together. They all involve the question whether the plaintiff can avoid the payment of the assessments made on his lands on the ground of alleged unconstitutionality of the law authorizing them.

The claim is to recover the cost of grading and paving Ellsworth avenue, on which plaintiff's lands front, under the Act of 2d April 1870, Pamph. L. 796. The main provisions of the act, to which reference need be made, providing for this improvement, are

1. It requires a petition from a majority of property-holders along the line of the proposed improvement, before the councils can act.

2. When authorized by councils, the improvement is placed under the exclusive control of the commissioners elected by the owners of property abutting on the improvement.

3. The cost of the improvement is to be paid in ten equal annual instalments with interest.

The legislative power to apportion a local tax, for a local improvement within the limits of a municipal corporation, has frequently been recognised by this court; so has the validity of municipal claims assessed on lots fronting on streets, their due share of the cost of grading, paving, curbing, building sewers and culverts, in proportion to the respective fronts: Pennock *v.* Hoover, 5 Rawle 291; Northern Liberties *v.* St. John's Church, 1 Harris 104; The City *v.* Wistar, 11 Casey 427; Commonwealth *v.* Woods, 8 Wright 113; Magee *v.* Commonwealth, 10 Id. 358; Wray *v.* The Mayor of Pittsburgh, Id. 365; Smith *v.* McCarthy, 6 P. F. Smith 359; City of Philadelphia *v.* Field, 8 Id. 320; Stroud *v.* City of Philadelphia, 11 Id. 255; Washington Avenue, 19 Id. 352.

In Seely *v.* City of Pittsburgh, 1 Norris 360, it was held that while the frontage rule of valuation might be a just mode of assessing the cost upon compact city lots where the properties do not materially differ in value, yet it could not be applied to a street made through rural districts, and so far as the Act of 2d April 1870 applied this mode of assessment to the latter districts, it was unconstitutional. The validity of the law generally is there conceded, but the right to apply it to the property in question is denied. Assuming that to be a correct exposition of the law, we will consider its application to the facts in the present case.

It is conceded that Ellsworth avenue was made through a rural district and that the property of the plaintiff sought to be charged was rural land. It would then be relieved from this mode of taxation unless other facts made it so chargeable. What are the other facts? As the first step towards procuring this improvement, a petition, to which the name of the plaintiff and twenty-seven other names were subscribed, was presented to the councils of the city of Pittsburgh. It declared the petitioners were the owners of a majority in

interest of the property abutting on Ellsworth avenue, and that
they desired to avail themselves of all the privileges of the Act
of 2d April 1870, and asked for the passage of an ordinance di-
recting the grading, paving and curbing of the same, and author-
izing the election of commissioners. To this petition was added
the affidavit of the plaintiff and two other signers thereof, averring
the petition to be signed by the owners of a majority in interest
of the property abutting on the avenue, and that the signatures
were the genuine signatures of the petitioners.

The court substantially charged the jury that if they found the
plaintiff in error signed the petition asking for the ordinance
directing the grading and paving of Ellsworth avenue, under the
Penn Avenue Act; that in pursuance thereof the ordinance was
passed; that he was duly elected one of the commissioners, and
acted as such in directing and superintending the work, selling the
bonds of the city, expending the proceeds thereof on the street,
and in making the assessments upon the properties, including his
own, for which this suit was brought, he was estopped from deny-
ing the validity of the act, or its application to Ellsworth avenue,
or the legality and validity of the mode of assessment provided in
the act.

It is not alleged that the evidence of these facts was insufficient
to submit to the jury, nor that its finding thereof was unjustified.
Conceding the facts, it is contended by the plaintiff in error that
they are insufficient to prevent his alleging the unconstitutionality
of the act for the purpose of relieving himself from its operation.

In Pickard v. Sears, 6 Ad. & El. 469, a leading case of estoppel
by conduct, it was said " the rule of law is clear that where one
by his words or conduct wilfully causes another to believe in the
existence of a certain state of things, and induces him to act on
that belief, so as to alter his own previous position, the former is
concluded from averring against the latter a different state of
things as existing at the same time."

It may now be declared as a general rule, that where an act is
done, or a statement made by a party, the truth or efficacy of
which it would be a fraud on his part to controvert or impair, the
character of an estoppel shall be given to what otherwise would be
mere matter of evidence. It is not necessary that the party against
whom an estoppel is alleged, should have intended to deceive: it
is sufficient if he intended that his conduct should induce another
to act upon it, and the other, relying on it, did so act: Bisp. Eq.,
§ 290.

Prior to the presentation of the petition of the plaintiff in error,
the city authorities had taken no steps towards the improvement of
Ellsworth avenue. In fact, under the act they had no power so to
do. The power was called into action by the petitioners. They
asked to have the avenue brought under the operation of the act.

4 Norris—27

[Bidwell *v.* City of Pittsburgh.]

They voluntarily asked for the privilege of becoming subject to all its provisions. They asked for the passage of the ordinance directing the work—for the assessment of their lands according to the frontage rule, in order to pay the bonds to be given to raise money to make the improvement.

The authorities acceded to the request. They altered their previous position. They assumed the large additional indebtedness, relying upon the words and conduct of the petitioners. The latter declared they would submit themselves to all the charges and responsibilities imposed by that act. They wilfully caused the authorities to believe this as a matter of fact. So believing, the authorities acted upon it. They accepted the offer in the terms in which it was made. The petitioners directed the work. They received and enjoy the benefits. To now permit them to deny the truth or the efficacy of the assurance given, and continued during the progress of the work, would work a fraud on the city, which cannot be sanctioned.

It is true every one is presumed to know the law, and knowledge thereof is said to be equally open to all. Conceding that the city had knowledge of the law, or ought to have had it, the like legal presumption applies to the plaintiff in error, and his equities derive no strength from that presumption. The city had no reason to believe that he would allege any invalidity in the law which he was praying to have extended over him.' The city was misled, not by expressive silence merely of the plaintiff in error, but by his decided and persistent action. It has been held that where a party has acted upon a particular construction of a contract which has been acquiesced in by the other, the latter is estopped from contesting it as the proper construction : Mercer Mining and Manufacturing Co. *v.* McKee, 17 P. F. Smith 170.

The constitutional right against unjust taxation, which the plaintiff in error invokes, is given him for the protection of his private property. He may waive that protection and consent to such action in regard to it as would otherwise be invalid. Having consented, and the other party having acted thereon, and made expenditures and incurred expense predicated thereon, the consent cannot be withdrawn. Hence, an act appropriating the private property of one person for the private purpose of another on compensation made, was held valid when he whose property was taken assented thereto, and receiving the compensation awarded was a sufficient assent : Cooley on Const. Lim. *181.

The valid waiver of constitutional rights both of person and of property is of frequent occurrence. The constitution guarantees the right of trial by jury to one charged with a crime, yet he may waive that right and plead guilty in a case where his life will pay the penalty. So his private property may not be taken for a public highway without compensation paid or secured, yet he may just as

[Bidwell *v.* City of Pittsburgh.]

effectively divest his right by a voluntary dedication to the public followed by acceptance and expenditure.

It is objected that inasmuch as some lands abutting on this avenue may not be held liable to the specific tax for grading and paving the same, in consequence of the owners thereof not having subjected themselves to the application of an estoppel, and in that case a portion of the cost of the improvement will fall on the tax-payers generally, of which the plaintiff in error is one, it would be unjust to impose on him this special tax in addition thereto. We are unable to see any force in this objection. His own direct action has charged his land with this special tax. If one of the consequences of that action has been to throw a portion of the cost of the improvement on the tax-payers generally, on what principle ought he to claim exemption therefrom? He has not derived less benefit than they from this improvement. No voluntary act of theirs caused the expenditure. Why, then, shall he not bear his share of the obligation, which his voluntary action has created and not cast it wholly on others? As, then, a portion of any general tax levied for this purpose would justly fall on him, it cannot furnish any ground for relieving his property from the payment of the special tax. If so relieved, his conduct would have the effect of imposing larger taxation on others, and thus work still greater injustice.

Numerous authorities sustain the conclusion at which we have arrived. Among them are : City of Burlington *v.* Gilbert, 31 Iowa 356 ; Story *v.* Furman, 25 N. Y. 230 ; Tash *et al. v.* Adams, 10 Cush. 252 ; Ferguson *v.* Landram, 5 Bush (Ky.) 233 ; Motz *et al. v.* City of Detroit, 18 Mich. 528 ; Lee *v.* Tillotson, 24 Wend. 337 ; The People *v.* Murray, 5 Hill 468 ; Mayor of Pittsburgh *v.* Scott, 1 Barr 309.

Whether other property on Ellsworth avenue has or has not become liable to assessment under the Penn Avenue Act is not a question now before us. The bonds issued by the city for the improvement of various streets under that act amount to about five millions of dollars. It may be that all who passively enjoyed the benefits of the improvements may not be liable to specific assessments to pay the bonds under the act ; yet it by no means follows that the plaintiff in error is discharged from his obligation : City of Burlington *v.* Gilbert, *supra* ; Kellogg *v.* Ely, 15 Ohio St. 66. The conduct or action of each may determine his own liability where the law would not otherwise make him liable. We discover no error in the record.    Judgment affirmed.