Driskel et al., Appellants, *v.* O'Connor et al.

Argued March 26, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*P. N. Shettig,* with him *Thomas A. Swope* and *F. J. Hartmann,* for appellants.

*Albert L. O'Connor,* with him *Neice A. Malloy,* for appellees.

Opinion by Mr. Justice Patterson, September 30, 1940:

Claiming to be the legally constituted school directors of the school districts of Allegheny and Munster Townships, appellants, Michael Driskel et al., seek to enjoin appellees, Albert L. O'Connor et al., from interfering with them in the exercise of their rights and the performance of their duties as such. Appellees claim that, by virtue of proceedings, the validity of which is attacked by appellants, in which the two districts in question joined with the School District of Clearfield Township and the School Districts of the Boroughs of Loretto and Chest Springs, for the purpose of forming a union school district, known as Prince Gallitzin School District, they have succeeded, by operation of law, to all the rights and duties thus sought to be asserted by appellants. The bill was dismissed and this appeal followed.

Involving, as it does, essentially, the right to exercise the powers of school directors, as between two rival sets of claimants, the controversy presents a question which can properly be decided only in an action of quo warranto. Cf. *Smith v. McCarthy,* 56 Pa. 359, 362. This Court said in *Brinton et al. v. Kerr et al.,* 320 Pa. 62, at pages 63-64: "We definitely state again that the title to office cannot be tested by mandamus *(Com. v. James,* 214 Pa. 319), injunction *(Eddy v. Ashley Boro.,* 281 Pa. 4) or any other proceeding than that provided by the common law. While this court may have inferentially passed on the title to office *(Bowers v. Reitz,* 315 Pa. 310, 313; 3 A. L. R. 568, 581) where the major question before the court was some other problem, where, as here, it is sought to be injected as the principal issue, we again announce as a definite rule that 'the exclusive remedy [to try the title to office] is by an action of quo war-

ranto': *Com. ex rel. v. Gibson,* 316 Pa. 429, 434; *Williams's App.,* 312 Pa. 477, 479; *Com. ex rel. v. Conroy,* 267 Pa. 518; *Hutchinson v. Goshorn,* 256 Pa. 69 . . . Quo warranto being a remedy which is fully adequate, that remedy must be followed and jurisdiction cannot be taken through other remedies at the convenience or with the consent of counsel." See also *Sewickley Twp. School Dist.'s Appeal,* 327 Pa. 396; *Branch Twp. School Dirs. Removal,* 330 Pa. 529.

Moreover, appellants have no standing to question the validity of the consolidation proceedings resulting in the formation of the Prince Gallitzin School District. The record shows that all of the appellants, as directors of the districts of the townships of Munster and Allegheny, joined with appellees, directors of the other three districts involved in the consolidation proceedings, in petitioning the State Superintendent of Public Instruction for permission to have the question of forming the proposed union district submitted to the electors of the five districts at the municipal election, held November 2, 1937, in accordance with the provisions of the Act of May 26, 1933, P. L. 1067 (amending sections 127, 128, 129 and 130 of the School Code of 1911 and adding section 131), in compliance with which, erroneously, as appellants now contend, the consolidation was carried through. It further appears that following the election, the returns of which showed that a majority of the voters in each district favored establishing the union district, appellants, together with the directors of the other districts, on May 28, 1938, attended and participated in a meeting called for the purpose of agreeing on a tentative budget, salary schedule, tax levy, and length of school term for the new district, which matters were then voted upon. Thus, appellants not only recognized the legality of the formation of the union district, but regarded themselves as members of its board of directors until May 28, 1938. It is provided in section 131 of the code that "Whenever any two or more school

districts shall be so consolidated into a union school district, the directors then in office in each of said districts shall continue in office until the expiration of their respective terms, and shall jointly constitute the board of school directors of the union school district." Having thus actively participated in the institution, formation, and organization of the union district, appellants are not now in a position to attack the legality of its existence. Cf. *Bidwell v. City of Pittsburgh,* 85 Pa. 412 and *Com. Appeal (White Twp. School Dist.),* 305 Pa. 263.

It is clear from what has already been said that the court below was not required in this proceeding, and consequently neither are we, to pass upon the questions raised by appellants with respect to the legality of the existence of the Prince Gallitzin School District, and that the bill was properly dismissed. However, in view of the disorder and discord attributed to this controversy and, in order that any continuation of the resultant inefficiency in the administration of the schools of the district, by reason of any further attempts to litigate the constitutional questions raised, might be avoided, we take occasion to do so.

Appellants contend that the attempted formation of the Prince Gallitzin district was abortive on the grounds (1) that the provisions of the amendatory act of 1933 had been impliedly repealed by section 1 of the Act of May 13, 1937, P. L. 605 (amending section 108 of the School Code), in so far as they relate to consolidation proceedings involving districts which, like the school districts of the Boroughs of Loretto and Chest Springs, employed no teachers for the school year 1936-1937,[1] and

---

[1] The provisions added to section 108 by section 1 of the Act of 1937 were held to be unconstitutional in the following cases: *Millbourne and East Lansdowne Districts,* 28 Del. 66; *Lower Turkeyfoot Twp. and Confluence Boro. School Dists. Merger,* 33 Pa. D. & C. 222; *Reed Twp. School Dist. and Halifax Township School Dist. Merger,* 40 Dauph. 193, 34 D. & C. 389; they have been repealed by section 7 of the Act of June 20, 1939, P. L. 491.

(2) that certain provisions of the School Code relating to the formation of union districts, as amended by the Act of 1933, are unconstitutional.

Section 108 of the School Code, as amended by the Act of 1937, provided, inter alia, in clause (b), that "From and after the first day of July, one thousand nine hundred thirty-eight, all school districts now existing in which no teacher has been employed prior to the first day of January, one thousand nine hundred and thirty-seven, for the school year one thousand nine hundred thirty-six—one thousand nine hundred thirty-seven (1936-1937), shall be merged with other districts, and the lands comprising the same, together with any property or equipment owned by any such district, shall become a part of and belong to such district or districts as the court of common pleas of the county in which the property is located shall determine." However, it is further provided, in clause (c), that "The provisions of clause (b) of this section . . . shall not apply in the case of any school district affected, if the district has since the first day of January, one thousand nine hundred and thirty-seven, and not later than the first day of July, one thousand nine hundred and thirty-seven, obtained from the State Council of Education the approval of a plan of consolidation of two or more districts as a union district, and has actually accomplished and completed such a consolidation before the effective dates set forth in clause (b) of this section."

Notwithstanding that approval of the plan of consolidation was obtained from the State Council of Education prior to July 1, 1937, and notwithstanding that all the steps required to be taken by the School Code, as amended by the Act of 1933, were taken prior to July 1, 1938, the last of the requirements, to wit, the filing of certificates of election returns showing a majority vote of the electors in each district involved voting in favor of forming the union district, having been met on November 9, 1937, appellants take the position that this

was insufficient to bring the attempted consolidation within the saving clause of section 108, and that because the consolidation embraced two districts employing no teachers, the entire proceeding was void. They argue that since section 129 of the Code provides that "Whenever any union district shall be formed as herein provided, such district shall become a union school district on the first Monday in July after it has been formed," and since the first Monday of July, in 1938, fell on July 4th, it follows that the consolidation was not "actually accomplished and completed" before July 1, 1938, as required by the saving clause of section 108, as amended.

While the language of the saving clause might be considered somewhat ambiguous, when read in connection with section 129, the intention is clear that districts, which might otherwise be affected by clause (b) of section 108, should be excepted from its provisions, provided they have obtained the requisite approval of the State Council of Education not later than July 1, 1937, and have taken all the steps prescribed by law for the formation of a union district, prior to the effective dates set forth in the preceding clause—July 1, 1938 in cases of districts employing no teachers. To construe the words "actually accomplished and completed such consolidation" as contended for by appellants would be to render the saving clause meaningless and impossible of performance. When the provision, in section 127 of the Code, that the question of formation of a union district shall be submitted to the electors of the districts involved "at the next general or municipal election" and the provision in section 129 that when any union district shall be formed, it shall "become a union school district on the first Monday in July after it has been formed," are considered together, it becomes evident that, under appellants' construction of the language of the saving clause, no district obtaining the requisite approval of the State Council between the dates of January 1, 1937 and July 1, 1937, could possibly bring itself within it.

The situation presented calls for application of the "settled rule of construction that the legislature will be presumed to have intended what is reasonable and effectual, and not what is productive of absurd or anomalous consequences or is impossible and incapable of execution": *Foster's Petition*, 243 Pa. 92, 98; Statutory Construction Act, Act of May 28, 1937, P. L. 1019, section 52.

Appellants' arguments against the constitutionality of the provisions of the Code relative to the formation of union districts, as amended by the Act of 1933, are likewise untenable. The attack is directed principally at section 130 of the Code, which section, it is contended, is obnoxious to the Fourteenth Amendment of the Federal Constitution. The section in question provides: "Whenever any two or more school districts shall be consolidated into a union school district as herein provided, all the debts and liabilities of the several districts shall become the debts of the union school district, unless otherwise provided by an agreement in writing approved by a majority vote of each board of school directors prior to the time said question of forming a union school district is submitted to the voters. All rights of creditors against any of the said districts shall be preserved against the union school district. All property heretofore vested in the several districts shall become vested in the union district, and all debts and taxes owing to the districts, uncollected in the several districts, and all moneys in the treasuries of the several districts, shall be paid to the treasurer of the new district."

In *Troop v. Pittsburgh*, 254 Pa. 172, it was said, in the opinion of the court below, adopted as the opinion of this Court: "Consolidation of municipalities and annexation of one municipality to another are not prohibited by the Constitution. The legislature may authorize such consolidation and annexation upon such terms as it may see fit to impose. It may adjust the indebtedness equitably among the units, or it may not, as in its discretion seems proper . . . 'When two or more

cities are consolidated into one municipality, the legislature by the act authorizing the consolidation may make the consolidated city liable for the indebtedness of the old municipalities. Or it may provide for an equitable apportionment of the existing burdens by requiring each of the respective municipalities to be responsible for its own indebtedness at the time of consolidation, and by providing for the payment of such indebtedness by taxation limited to the property located within the limits of the municipality contracting the same': *Penna. Co. v. Pittsburgh*, 226 Pa. 322. *The School Code of May 18, 1911, P. L. 309, makes the new districts liable for the debts of those included therein, and the code was held constitutional: Minsinger v. Rau, 236 Pa. 327."* And, in *Poor District Case (No. 2)*, 329 Pa. 410, this Court held as follows: "The property of the district as well as its life is within the control of the legislature. Had the General Assembly abolished the district and not transferred its functions to another agency, its property would have vested automatically in the state, subject to its absolute control so long as not diverted from public use: *Meriwether v. Garrett*, 102 U. S. 472, 513. When the legislature transfers the functions, and annexes the territory of one municipal corporation to another, the property of the municipality annexed vests ipso facto in the consolidated unit: *Mount Pleasant v. Beckwith*, 100 U. S. 514, 528; see *D'Esterre v. City of New York*, 104 Fed. 605, 611; 1 Dillon, Municipal Corporations (5th ed.), section 357. Hence, of course, the legislature may expressly so transfer the property of the municipality that is abolished: *Hunter v. Pittsburgh*, 207 U. S. 161, affirming *Pittsburgh's Petition*, 217 Pa. 227. 'The State . . . may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, . . . repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens,

or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States': *Hunter v. Pittsburgh,* supra, at pages 178-179. *The same principle controls, a fortiori, in cases of governmental agencies, such as poor districts, having more limited powers than have cities. . . . Application of this principle has been made in cases of school districts: City of Jeffersonville v. Jeffersonville School Township,* 77 Ind. App. 32, 130 N. E. 879. See *Wilkins Township School District,* 18 Pa. Superior Ct. 293; *Rawson v. Spencer,* 113 Mass. 40; *Conway v. Joint School District,* 150 Wis. 267, 273, 136 N. W. 612."

These decisions and the authorities cited in support thereof must be regarded as having set at rest any question as to the constitutional validity of the provisions of section 130 of the School Code; they are clearly violative of neither the State nor Federal Constitution. Additional objections to various other provisions of the Code relating to the formation of union districts are made by appellants, but, as no provisions of the organic law with which they are believed to be in conflict have been pointed to, and we know of none, these objections are not considered.

Decree affirmed at appellants' cost.