Opinion by
 

 Baldkige, J.,
 

 Windom Bryant and Thaddeus M. Daly, Jr., defendants in the court below and appellees herein, were charged jointly and separately in four indictments, numbered 709 to 712 inclusive, May Term, 1940, with the violation of section 22 of article XIX of the City Charter Act, approved June 25, 1919, P. L. 581, 53 PS §3342, and with conspiracy to violate that act in that they did unlawfully, etc., order, direct and aid in the false marking and grading of applicants who had taken the examination conducted by the Civil Service Commission of Philadelphia for the positions of patrolmen and police officers.
 

 Section 22, supra, makes it a misdemeanor for: “Any person who wilfully, by himself or in collusion with one or more persons, shall defeat, deceive, or obstruct any person in respect to his or her right of examination ......according to this article or to any rules or regulations prescribed pursuant thereto; or who shall, wilfully or corruptly, falsely mark, grade, estimate, or report upon the examination or proper standing of any person examined,......pursuant to the provisions of this article, or aid in so doing;......”
 

 
 *547
 
 Upon the close of the appellants’ case demurrers filed by counsel for the defendants were sustained by the court. The reasons assigned for this action were the failure of the commission (1) “to advertise an examination at least ten days in advance in at least five newspapers having a bona fide circulation in such city of at least thirty thousand copies per issue and for posting notices of such examination in the office of the Commission accessible to the public during business hours;” (2) the failure of the Commonwealth to present evidence showing [a] “the creation of eligible lists upon which shall be entered the names of successful candidates in the order of their standing in the examination;” [b] “that there was prepared by the Commission a list of eligibles for the grade of service;” [c] “markings of all examinations were completed and the resulting eligible list posted within sixty days of the date of the examination;” and [d] “that a conspiracy existed between Thaddeus M. Daly, Jr. and Windom Bryant in accordance with the terms of the indictment.” These appeals by the Commonwealth followed.
 

 Section 13 of Article XIX, supra, 53 PS §3333, provides that the civil service commission shall adopt rules which shall have the force and effect of law, providing inter alia: “1. For the classification of all positions in the classified service. 2. For public advertisement of all examinations, at least ten days in advance, in at least five newspapers having a bona fide circulation in such city of at least thirty thousand copies per issue, and for posting notices of such examinations in the office of the commission, accessible to the public during business hours. 3. For the creation of eligible lists, upon which shall be entered the names of successful candidates in the order of their standing in examination. Such lists shall remain in force not longer than two years.”
 

 Section 14 of Article XIX, supra, 53 PS §3334, pro
 
 *548
 
 vides that: “All examinations shall he free, impartial, and practical in their character, and shall deal with the duties and requirements of the position to be filled. They may include examinations of physical fitness and manual skill. Examinations shall be in charge of the chief examiner, except when a commissioner acts as examiner ...... From the return and report of the examiners, or from the examinations made by the commission, it shall prepare a list of eligibles for such grade. Such persons shall take rank upon the list in the order of their relative fitness as determined by the examination, without reference to priority of time of examination. The markings of all examinations shall be completed and the resulting eligible list posted within sixty days from the date of- the examination.”
 

 The Commonwealth’s evidence established that on July 19, 1939, the commission made public advertisement in two, instead of five, daily newspapers as provided in paragraph 2, section 13, article XIX, supra, that examinations for patrolmen would be held. Pursuant to that advertisement, examinations were held October 9, 11, and 13, and November 29, 1939. Only one person, however, was examined on the last date. On the three days in October 6,480 men were examined. The results were recorded upon rating sheets and a final average was ascertained and a record made upon a computation sheet from which was created the examiner’s report, setting forth the candidates’ rank and from this report an eligible list was created. This eligible list was not posted because it was “too bulky.” A mimeographed sheet, referred to as Exhibit No. 15, purported to be a copy of the eligible list and of the examiner’s report, was posted December 29, 1939. The eligible list, consisting of the names of 600 candidates, was taken from the examiner’s report, which comprised the names of 5,553 candidates who had attained the passing average.
 

 Charles S. Shaughnessy, the chief examiner, in ex
 
 *549
 
 plaining this list testified: “For practical purposes we did not mimeograph all of those names ...... It is not an exact copy your Honor, but it is insofar as the rank, the name, the address and the final average of the candidates are concerned — it is an exact copy to that extent......Up to 1000 names.”
 

 After the eligible list had been prepared from the computation sheets, Daly complained to Shaughnessy of the position on the list of certain men in whom he was “especially interested” and that they were not “high enough.” Shaughnessy would not take any action upon the request of one commissioner and summoned Bryant. Shaughnessy stated that Daly wroté the names of men whose ratings he wanted raised and the witness showed them to Bryant, who informed him that if Daly wanted his men higher in rank, “he must have it.” Obeying these instructions Shaughnessy ordered his clerks to change the ratings and final averages of the applicants named. This was done and as a result the men Daly named were given a higher rank on the lists than they were entitled to have.
 

 The question arises whether the defendants can escape a conviction for violating the provisions of section 22 by not complying with sections 13 and 14 of Article XIX of the Act of 1919, supra.
 

 It is very clear that one of the main purposes of this statute is that the examinations shall be honestly conducted and that all applicants will be fairly and impartially rated. Accepting as true the Commonwealth’s evidence, it is quite apparent that the defendants attempted to defeat an important feature of this act. The Commonwealth concedes that the provisions in sections 13 and 14 are mandatory upon the commission and that they were violated, but it contends that it was not intended that such a disregard of the requirements of the statute and dereliction of duty should afford an avenue of escape to wilful offenders of section 22. We think that such a nullification of an
 
 *550
 
 important provision of the statute was never the intention of the legislature, and should not be sanctioned.
 

 If the argument that there could be no conviction of the defendants because the examinations were void, which is made in behalf of the defendants, is accepted, dishonest commissioners, for political or financial reasons desiring to give preference to particular individuals in which they are interested, may be designedly violating sections 13 and 14 go scot-free, not because they were guiltless, but due entirely to their own neglect to comply with other sections of the act. Such a result is inconsistent with one’s sense of right and ought not, if possible, be sanctioned.
 

 The Statutory Construction Act of May 28, 1937, P. L. 1019, article IY, §52, 46 PS §552, provides that courts may be guided by certain presumptions, one of which is: “(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable;” Dris
 
 kel et al. v. O’Connor et al.,
 
 339 Pa. 556, 563, 15 A. 2d 366.
 

 A somewhat similar situation
 
 to the
 
 one before us arose in Montana in
 
 State ex rel. Clark v. Second Judicial Dist. Court et al.,
 
 78 Pac. 769, 770. A membér of a jury commission by his misconduct rendered the making of a jury list so irregular as to others as to make it invalid. The court held that the defendant could not take advantage of his own wrongdoing when called on to answer a criminal charge. “Whatever may be the rights of others, not members of such commission, to complain of the irregularities in the selection of such jury list, we hold that this relator’s mouth is closed when he assumed to act as such commissioner, and has solemnly declared that the mandates of the law were met and fully complied with, to say that in fact he, as well as the other members of such commission, who also assumed to act as such, had so wilfully or negligently disobeyed the law as to render the selection of á jury list wholly nugatory. To say that the relator’s
 
 *551
 
 position is tenable would be tantamount to saying that two members of a jury commission may commit any crimes known to the law, and absolutely defy punishment, or even trial, during their terms of office by designedly vitiating the jury list and taking advantage of their own wrongdoing. It is not possible that any such condition of affairs can exist under, or be countenanced by, the law.”
 

 We cannot accept the construction adopted by the lower court. If we did section 22 of the Act of 1919, supra, could very readily be rendered nugatory. This is contrary to the settled rule of statutory construction that every law must be construed, if possible, to give effect to all its provisions:
 
 Commonwealth ex rel. Schnader, Attorney
 
 General,
 
 v.
 
 King, 312 Pa. 412, 415, 167 A. 309;
 
 Commonwealth v. Hubbs (No. 1),
 
 137 Pa. Superior Ct. 229, 239, 8 A. 2d 611.
 

 We entertain no doubt that sufficient evidence was adduced to sustain the indictment charging the defendants with conspiring together with criminal intent to do an unlawful act. All the essential elements of the crime were proved. See
 
 Commonwealth v. Kirk et al.,
 
 141 Pa. Superior Ct. 123, 137, 14 A. 2d 914. A conspiracy is complete “the moment the agreement is made, whether acts be done in pursuance of it or not.”
 
 Commonwealth v. Kelson,
 
 134 Pa. Superior Ct. 132, 135, 3 A. 2d 933.
 

 The unanimous opinion of this court is that the Commonwealth made out a case that warranted the submission of the issues involved to a jury and that the court erred in sustaining demurrers filed by defendants.
 

 The appellees’ paper book contains an argument in support of a motion to quash the appeal. That matter was given previous consideration by this court, and on July 18,1941 an order was entered refusing the motion.
 
 *552
 
 We are not convinced that we made an error in so doing.
 

 The judgments of the lower court are reversed and the record remitted to the court below for a new trial.